UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

MICHAEL SULLIVAN,

                        Plaintiff,                 **MEMORANDUM & ORDER**

           -against-                     12-CV-2834 (PKC)

LOCAL 553 PENSION FUND and BOARD
OF TRUSTEES OF THE LOCAL 553 PENSION
FUND,

                        Defendants.

----------------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

From 1979 through 2010 Plaintiff Michael Sullivan ("Sullivan" or "Plaintiff") was employed as an oil burner mechanic for companies that maintained collective bargaining agreements with Local 553 International Brotherhood of Teamsters ("Local 553" or the "Union"). Upon his retirement, Plaintiff submitted an application for earned pension benefits to Defendant Local 553 Pension Fund (the "Fund"). The Fund granted Sullivan's application for credits with two exceptions: (1) 3.25 credits for the years 1979-1982, during which Sullivan was employed by Northside Fuel Corp. ("Northside") ("Northside Dispute"); and (2) .25 credits for a portion of 1999, during which he was employed by Ideal-Quiet Heet Corp. ("Ideal") ("Ideal Dispute").

Plaintiff initiated this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002 (2)(B)(3), to recover the pension benefits denied by the Fund as part of the Northside and Ideal Disputes. Plaintiff now moves for summary judgment with

respect to both disputes. Defendants cross-move for summary judgment only as to the Northside Dispute.

The Fund's decisions to deny Plaintiff the Northside and Ideal pension credits should only be overturned if they were "arbitrary and capricious." Because the Fund's decision with respect to the Northside Dispute was *not* "without reason," the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendants' motion for summary judgment as to that claim. With respect to the Ideal Dispute, there remain genuine issues of disputed fact as to whether Sullivan worked the required 250 service hours for Ideal in 1999 to earn the .25 pension credits he seeks. Plaintiff's motion for summary judgment as to the Ideal claim is, therefore, DENIED.

## BACKGROUND

I. **Relevant Facts**[1]

A. The Parties

The Fund is a multi-employer benefit plan that provides pension benefits to covered employees, retirees, and their dependents. (Dkt. 18 ("Def. 56.1") ¶ 10; Dkt. 30 ("Pl. 56.1") ¶¶ 1-2.)[2] The plan was established pursuant to the collective bargaining agreements ("CBAs") between Local 553 and various employers. (Def. 56.1 ¶ 10.) The Fund is administered by the Defendant Board of Trustees (the "Trustees"), which is comprised of representatives from Local 553 and representatives from employers in the fuel oil industry. (*Id.*) The Trustees operate the

---

[1] Because Plaintiff has failed to respond to Defendants' Local Rule 56.1 Statement, this Court shall deem any such facts undisputed. *See* Local Rules of the United States District Courts for the Southern and Eastern Districts of New York 56.1(c)-(d) ("56.1 Statement").

[2] A standalone citation to a 56.1 Statement denotes that this Court has deemed the underlying factual allegation undisputed. Any citations to a party's 56.1 Statement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to underlying documents.

Fund pursuant to the terms of the Local 553 Pension Fund Amended and Restated Trust Agreement ("Trust Agreement"), the terms of the Pension Regulations for the Local 553 Pension Fund ("Pension Regulations" or "the Plan"), and the terms of the Summary Plan Description for the Local 553 Pension Fund ("Summary Plan Description"). (Def. 56.1 ¶ 11.)

Sullivan worked in the fuel oil industry for various companies that maintained CBAs with the Fund. (*Id.* ¶ 3.) Based on such work, Plaintiff is a participant in the Fund and receives a pension benefit from the Fund, effective January 1, 2011, in the amount of $1,842.50 per month. (*Id.* at ¶¶ 2-3, 9.)

Employers that participate in the Fund made pension benefit contributions to the Fund on Sullivan's behalf for each year from 1982 through 2009, with the exception of 1997 and 1998, which are not in dispute. (*Id.* ¶ 3.) Sullivan earned credit for each year in which contributions in excess of 250 hours were made on his behalf, for a total of 24.75 credits.[3] (*Id.*)

B. Northside Dispute

Sullivan seeks 3.25 pension credits from the Fund based on his work for Northside from 1979-1981. (Pl. 56. 1 ¶ 5.) Defendants concede that Plaintiff has been a participant in the Plan since 1982 (Def. 56.1 ¶ 3), but dispute that he is owed benefits for work prior to 1982. The Fund's records show that no employer paid pension contributions to the Fund for work performed by Sullivan from 1979-1981. (*Id.* ¶ 4.)

On April 7, 2011, the Trustees denied Plaintiff's request for retirement benefits for work he performed for Northside during the period from 1979-1981 and a portion of 1982, totaling

---

[3] According to Section 4.1(a)(ii) of the Plan, participants in the Plan are entitled to .25 pension credits for each 250 hours worked. (Dkt. 29-4 ("Sullivan Ex. D") at 14.) However, even if a participant works more than 1,000 hours in "Covered Employment" he or she cannot earn more than 1.00 pension credit per year. (*Id.*) Section 1.9 of the Plan defines "Covered Employment" as "employment for which an Employer is obligated by virtue of his Collective Bargaining Agreement or other Agreement to contribute to the Pension Fund." (*Id.* at 4.)

3.25 credits. (Pl. 56. 1 ¶ 5.) The denial letter stated, in relevant part: "the Trustees denied your request for pension credits for 1978, 1979, 1980, 1981, and 1982 based on work you state you performed with [Northside] because Northside was not a signatory to a collective bargaining agreement with Local 553 . . . during the years in question, and was therefore not a contributing employer to the Fund." (Dkt. 29-3.) The letter also stated that Sullivan did not demonstrate that he was working in "Covered Employment" that would substantiate his claim for credits from 1979-1981. (*Id.*)

On July 6, 2011, Plaintiff appealed the denial of benefits to the Trustees, requesting 3.25 credits towards his pension for the period of time he was employed at Northside (the "Appeal"). (Pl. 56. 1 ¶ 8.)[4] In the Appeal, Sullivan admitted that his employment was not included in a "covered" "category of employment" as defined by the Pension Regulations, and "[t]herefore concede[d] that the period of time from 1979 until 1982 when Mr. Sullivan was employed by Northside does not meet the definition of a 'Contribution Period.'" (Dkt. 22-4 at 2.) Sullivan instead argued that he was entitled to pension credit for his work with Northside because after leaving Northside, Sullivan worked in covered employment with Manhattan & Queens Fuel. Corp. ("M & Q"), and pursuant to Section 1.9 of the Pension Regulations, "[f]or purposes of service prior to the Contribution Period, 'Covered Employment' shall include employment during a period of time immediately preceding when the Employer became so obligated. It shall also include employment by any Employer which was covered by a written agreement with the Union." (*See id.* at 3) (emphasis omitted.)

Importantly, as discussed *infra*, Sullivan conceded that, between his employments with Northside and M & Q, he worked for a brief time with Globe Fuel Oil ("Globe"), which was not

---

[4] The documents submitted by Sullivan in support of his Appeal are attached as Exhibit E (Dkt. 29-5, 6 ("Sullivan Ex. E")) to the Sullivan Decl. (Dkt. 29.)

4

a Local 553 employer. (*Id.*) He argued that the intervening work for Globe was irrelevant because "credit is not limited to union employers whose period of employment directly preceded a period when the employee was a union member. Instead, credit is owed to any employee who is employed by a Local 553 shop but is not a union member who at any time subsequent to that period is employed by a Local 553 employer, regardless of whether the two periods of employment are continuous." (*Id.*)

Plaintiff appended to the Petition evidence that, in substance, demonstrated that he worked for Northside during the relevant time period and affidavits that confirmed that Northside was a signatory to a CBA with Local 553 during the relevant time period. (*See* Sullivan Ex. E.) On October 6, 2011, the Defendants advised Plaintiff, via letter, that they were postponing consideration of his Appeal because the Trustees were "continuing to investigate whether [Northside] was a signatory to a collective bargaining agreement with [Local 553] for the years 1979 through 1982." (Dkt. 29-7.) The letter also noted that that the pay stubs Sullivan "submitted for Northside have pay increases and rates that do not correspond to the rates and pay increases that were in the industry contract for Local 553 employers during the subject time period." (*Id.*) Most importantly, the letter stated that, "taking into account your attorneys' concession that you were not working in covered employment during your time at Northside and that you worked for a non-Local 553 employer after leaving Northside, we are investigating whether you are able to receive credit for your work at Northside under the terms of the Plan." (*Id.*)

On December 9 2011, the Defendants denied Plaintiff's petition with respect to his period of employment at Northside. (Dkt. 29-8.) The letter cited three bases for the denial: (1) Northside was not a signatory to a collective bargaining agreement with Local 553 "during the

years in question, and was therefore not a contributing employer to the Fund"; (2) "you [Sullivan] have conceded that the work you performed for Northside during the time in question was not work in a category of employment covered by a collective bargaining agreement"; and (3) "your [sic] worked for an employer that did not contribute to the Fund immediately after your work with Northside and before you began working in Covered Employment for a different employer." (*Id.*) As will be discussed, the crux of the instant litigation as to the Northside Dispute is whether the Trustees' denial of Sullivan's application, based on the above three justifications, was arbitrary and capricious.

Records produced by the Defendants during discovery in this case demonstrate that Northside was a signatory to an agreement or collective bargaining agreement with Local 553 during the period Plaintiff was employed at Northside. (Pl. 56. 1 ¶ 33.) Defendants concede this point. (Dkt. 32 (Def. 56. 1 Reply) ¶ 33.) However, the Fund's records demonstrate that Northside did not pay pension contributions to the Fund for work performed by Sullivan from 1978-1982, *i.e.,* Sullivan was not working in "covered employment." (Def. 56.1 ¶ 5.) Moreover, Defendants' records demonstrate that Sullivan did not earn pension credit with the Fund for any period prior to 1982, and that in 1982, Plaintiff earned pension credit only for his work with M & Q, not Northside. (*Id.*)

C. <u>The Ideal Dispute</u>

On December 9, 2011, Sullivan also received a separate letter denying his application for .25 pension credits for work he allegedly performed for Ideal in 1999. (Dkt. 29-9.) The reason cited in the denial letter is that Plaintiff "did not perform sufficient work in 'Covered Employment'" to substantiate his claim for the additional quarter credit in 1999. (*Id.*) Sullivan

appealed that determination on December 28, 2011. (Dkt. 23-6.) By letter dated March 29, 2012, the Fund informed Sullivan that the Trustees had denied his appeal, stating that:

> the evidence you submitted in response to inquiries from the Trustees as to the type and amount of employment you performed does not substantiate your claim because it does not show that you worked 250 hours or more in 1999 so as to qualify for additional pension credit. Specifically, the Trustees determined that you did not perform sufficient work in 'Covered Employment,' as defined at Section 1.9 of the [Pension Regulations] to substantiate your claim for additional credit in 1999.

(Dkt. 23-8.) The letter did not specify how the Trustees calculated the relevant hours, except to say that the "Trustees reviewed all of the evidence." (*Id.*)

At the end of 1999, the Fund sent Sullivan his "Annual Statement" for that year, which showed that Ideal had paid benefit contributions on Sullivan's behalf for a total of 212.5 hours he worked in December 1999. (Dkt. 33-1.)[5]

D. Relevant Plan Provisions

Section 1.8 of the Plan defines Contribution Period as "the period during which an employer is obligated by a Collective Bargaining Agreement to contribute to the Fund with respect to a category of employment." (Sullivan Ex. D at 4.)

Section 1.9 of the Plan defines "Covered Employment" as "employment for which an Employer is obligated by virtue of [its] Collective Bargaining Agreement or other Agreement to contribute to the Pension Fund." (*Id.*) Section 1.9 further provides that "[f]or purposes of service prior to the Contribution Period, Covered Employment shall include employment during a period of time immediately preceding the date when the Employer became so obligated. It shall also include employment by an Employer which was covered by a written agreement with the Union." (*Id.*)

---

[5] Dkt. 33-1 is "the Annual Statement that the Fund sent to Sullivan [in 1999]," which is attached to the Third Sankar Decl. (Dkt. 33) at Ex. A.

7

Section 4.1(a)(ii) of the Plan provides that for Employment during the Contribution Period, "a Participant shall be credited with Pension credits on the basis of his Hours of Service in Covered Employment." (*Id* at 14.) An individual must work at least 250 hours in covered employment to earn .25 pension credits in any given year. (*Id.*)

Section 4. 1(b) of the Plan provides that for employment *before the contribution period*, a "Participant shall be credited with Pension credits for periods before the Contribution Period . . . on the basis of Work in Covered Employment," in accordance with a schedule that provides for 1 pension credit if an employee worked three calendar quarters. (*Id* at 15.) An employee shall be deemed to have "worked" in a given quarter if the employee performed work during a least one day in that quarter. (*Id.*)

"Calendar Year" is defined as the "period from January 1 to the next December 31." (*Id.* at 3.)

Section 1.15 of the Plan defines "Hour of Service" as "each hour for which an employee is paid or entitled to pay by the Employer(s) . . . ." (*Id.*)

## DISCUSSION

### II. Standards of Review

#### A. Summary Judgment

Summary judgment is proper only where, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Redd v. N.Y. Div. of Parole,* 678 F.3d 166, 173-74 (2d Cir. 2012). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law identifies "which facts are material," and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law

will properly preclude the entry of summary judgment." *Id.* In determining whether there are genuine disputes of material fact, a court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir. 2003) (citation and quotation marks omitted).

This standard imposes the initial burden on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial. *Id.* at 324*; see also Anderson*, 477 U.S. at 256-57. The nonmoving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [their] version of the events is not wholly fanciful." *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998) (collecting cases).

B. <u>Trustees' Denial of Pension Credit</u>

Courts review a denial of pension benefits *de novo* unless the relevant benefit plan gives its administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 763 (2d Cir. 2002) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1988)). If the plan does include such a grant of discretionary authority, a reviewing court should defer to that authority and evaluate the plan administrator's decisions under an "arbitrary and capricious" standard. *Id.*; *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995); *O'Shea v. First Manhattan Co. Thrift Plan & Trust*, 55 F.3d 109, 111-12 (2d Cir. 1995). The Pension Regulations granted the Trustees "discretion and authority to interpret Plan terms" and resolve "[a]ny dispute as to the eligibility, type, amount or duration of benefits." (Sullivan Ex. D at 34-35, 51, ¶¶ 7.4, 8.7; *see*

9

*also* Dkt. 20-1[6] at 2 (§ 3), 4-6 (§§ 2, 7-8).) Therefore, the Court will apply the arbitrary and capricious standard to the Trustees' decision to deny Sullivan the additional pension credits he seeks.

"Under the arbitrary and capricious standard, the scope of review is narrow." *O'Shea*, 55 F.3d at 112. A denial of a claim is arbitrary and capricious if the decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan*, 52 F.3d at 442. (citation and quotation marks omitted); *Miller v. United Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir. 1995). However, "where the administrator imposes a standard not required by the plan's provisions, or interprets the plan in a manner inconsistent with its plain words, its actions may well be found to be arbitrary and capricious." *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 133 (2d Cir. 2008) (quoting *Pulvers v. First UNUM Life Ins. Co.*, 210 F.3d 89, 93 (2d Cir. 2000)).

### III. Cross-Motions for Summary Judgment

Plaintiff moves for summary judgment seeking 3.25 credits he alleges he earned for work he performed for Northside from 1979-1982, and .25 pension credits he alleges he is owed for work performed for Ideal in 1999. Defendants cross-move for summary judgment only as to the Northside Dispute.

#### A. Northside Dispute

Plaintiff advances two arguments in support of his motion that Defendants' denial of his petition to receive an additional 3.25 credits for his work with Northside was arbitrary and capricious. First, his Petition was incorrectly denied on grounds that Northside was not a signatory to an agreement with the Union during the time in which Plaintiff was employed by

---

[6] Dkt. 20-1 is a copy of the Trust Agreement, which is attached as Exhibit A to the First Sankar Decl. (Dkt. 20.)

Northside. (Dkt. 31 ("Pl. Mem.") at 13-14.) Second, even assuming Plaintiff did not work in "covered employment" at Northside, he is still entitled to pension benefits based on Section 1.9 of the Plan, which governs credit for "service prior to the Contribution Period." (*Id.*)

Plaintiff's first argument—that Defendants' denial was arbitrary and capricious because it relied on the incorrect assumption that Northside was not a signatory to the Local 553 CBA—is without merit. Even accepting, as the Court does, that Northside was a signatory to the CBA and that the denial of pension credits on that basis was erroneous,[7] the Trustees ultimately denied Sullivan the pension credits on the alternate, and factually correct, ground that Sullivan's work for Northside was not "in a category of employment covered by a collective bargaining agreement with Local 553." (Dkt. 23-3 at 1.) Indeed, Defendants based this finding on Plaintiff's concession in his Appeal:

> **"Mr. Sullivan's employment was not a 'category of employment' covered by this agreement. Therefore we concede that the period of time from 1979 until 1982 when Mr. Sullivan was employed by Northside does not meet the definition of a 'contribution period.**"

(Dkt. 22-4 at 2) (emphasis added.) Additionally, the Fund's records show that Northside did not make any pension contributions to the Fund on Sullivan's behalf from 1978-1982, which confirms that Sullivan was not working in "Covered Employment" during that period. (Def. 56.1 ¶ 5.)[8] The Court cannot hold that the Trustees decision was arbitrary and capricious merely because a certain factual determination was incorrect where alternate bases cited by the Trustees were factually correct and based on substantial evidence. *See Pagan*, 52 F.3d at 442.

---

[7] Defendants concede that "after the administrative process was complete[,] Defendants learned that there was an agreement in place during the time at issue that allowed the Fund to accept pension contribution on behalf of employees" working for Northside. (Dkt. 17 ("Def. Mem." at 2.)

[8] This point is further buttressed by Plaintiff's admission that he did not join the Union until 1982. (*See* Dkt. 21-10.)

11

Plaintiff's second argument—that Plaintiff is entitled to pension credit for the work he performed for Northside from 1979-1982 as "service prior to the Contribution Period," pursuant to Section 1.9 of the Plan—also fails. Section 1.9 provides that:

> [f]or purposes of service prior to the Contribution Period, 'Covered Employment' shall include employment during a period of time immediately preceding the date when the Employer became . . . obligated [to make pension contributions to the Plan]. It shall also include employment by an Employer which was covered by a written agreement with the Union.

(Sullivan Ex. D at 4.)

Plaintiff appears to make two alternative arguments with respect to Section 1.9. His first argument is that because his employment with Northside was "not a 'category of employment' covered by the [CBA]," the period during which he worked for Northside, *i.e.*, 1979-1982, "does not meet the definition of a 'Contribution Period.'" (Dkt. 22-4 at 2.) Hence, Plaintiff argues, this period of work constitutes "prior service" under Section 1.9 because it was "employment by an employer [*i.e.*, Northside] that was covered by a written agreement with the Union [*i.e.*, the CBA]." (*Id.*)

This argument, however, is built on a faulty premise. The fact that Plaintiff worked for Northside in non-Covered Employment does not mean that this period of employment is *outside* the "Contribution Period." The Contribution Period is "the period during which an Employer is obligated by a Collective Bargaining Agreement to contribute to the Fund with respect to *a category of employment*." (Sullivan Ex. D at 4, § 1.8) (emphasis added.) Between 1979 and 1982, Northside was a Plan signatory and obligated to contribute to the fund for one or more categories of employment. That Plaintiff's work for Northside was not in one of these categories of covered employment does not make it "prior" service under the agreement; rather, it simply makes it non-Covered Employment, for which Northside was not obligated to make pension

12

contributions. *Cf.* 29 C.F.R. § 2530.210 (c)(3)(ii) (an employee is covered by a CBA and engaged in "covered service" for the purpose of benefit accrual when he or she is engaged in "service with an employer or employers maintaining the plan *within* a job classification of employees covered under the plan") (emphasis added).

Indeed, Plaintiff's construction of Section 1.9 would render the CBA meaningless since one of its central purposes is to limit the employer's pension obligations to specifically identified categories of employment. The meaning of "Employment by an Employer which was covered by a written agreement with the Union" in Section 1.9 is logically understood as working within a category of covered employment under the subject CBA. (*See* Sullivan Ex. D at 4.) To hold otherwise would yield the result that anyone who works for a Covered Employer is entitled to pension credit with the Fund regardless of his or her position. Either the employee would be working in Covered Employment as defined by the CBA, and thus entitled to pension credit, or the employee would not be working in non-Covered Employment, but that work would be considered "service prior to the Contribution Period" and thus constitute Covered Employment, which would again entitle the employee to pension credit. This is an outcome clearly not contemplated by parties that specifically went to lengths to define the scope of covered employment in the relevant agreements. Thus Plaintiff's proposed interpretation of Section 1.9 is plainly erroneous.[9]

Alternatively, Plaintiff argues that because he worked in Covered Employment for M & Q after leaving Northside, his "prior service" for Northside is retroactively converted into

---

[9] In denying Plaintiff's pension claim, the Trustees did not address this interpretation of Section 1.9, instead relying on the factual insufficiency of the argument, discussed *infra*. The Trustees' reliance on a different rationale for denying the claim does not render it arbitrary and capricious. *See Pagan*, 52 F.3d at 442 (the denial of a claim is arbitrary and capricious if the decision is "without reason, unsupported by substantial evidence or erroneous as a matter of law") (citation and quotation marks omitted); *Miller*, 72 F.3d at 1072.

Covered Employment pursuant to Section 1.9. Even assuming, *arguendo*, the correctness of Plaintiff's interpretation,[10] he is not entitled to pension credit for his work for Northside between 1979 and 1982. In order to obtain credit for this period of time, Plaintiff would had to have worked in covered employment "during a period of time *immediately preceding*" another period of covered employment. (Sullivan Ex. D at 4.) As Plaintiff concedes, however, "[a]fter leaving Northside in 1982, Mr. Sullivan was employed for several months by Globe," a *non*-Local 553 shop. Thus, Plaintiff's work for Northside did not "immediately precede" a period of covered employment for M & Q; rather, it "immediately preceded" another period of non-covered employment for Globe.

The Trustees justified the denial of Sullivan's pension, in part, on this basis:

"[Y]ou have conceded that the work you performed for Northside during the time in question was not work in category of employment covered by a collective bargaining agreement with Local 553 . . . and that you worked for an employer that did not contribute to the Fund immediately after your work with Northside and before you began working in Covered Employment for a different employer . . . .

---

[10] In fact, Plaintiff's alternate interpretation of Section 1.9 is illogical. The plain language of the provision indicates that it applies to a single employer—not two different employers—which "becomes" a Plan signatory during the time that the employee is working for the employer. It makes sense that the employee's previous work for the *same* employer that was not "covered" because of the absence of an agreement obligating the employer to pay pension benefits would be retroactively converted into covered employment. The employer, in deciding whether to participate in the Plan, knows that it will be taking on the pension obligations of its employees' previous periods of covered employment for that employer. By contrast, Plaintiff's interpretation of Section 1.9 would impose on an employer pension obligations for an employee's prior work for an entirely different company. Logically, no employer would agree to do this. *Cf., Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 146 (2d Cir. 2003) (quoting *Miles v. New York State Teamsters Conference Pension & Ret. Fund Employee Pension Benefit Plan,* 698 F.2d 593, 601 (2d Cir. 1983) ("In a situation [w]here both the trustees of [an ERISA plan] and a rejected applicant offer rational, though conflicting, interpretations of plan provisions, the trustees' interpretation must be allowed to control."). Again, however, the Trustees' reliance on a different, but valid, justification for denying Plaintiff's pension claim does not render it arbitrary and capricious. *O'Shea*, 55 F.3d at 112.

> **[E]ven if Northside was a signatory to a collective bargaining agreement with the Union, your work was not Covered Employment engaged in immediately prior to the Contribution Period because of your work for an intervening non-participating employer** and because the term Contribution Period refers to the status of an Employer and not the status of Employee."

(Dkt. 23-3.) (emphasis added.)

For all of the foregoing reasons, the Court cannot find that the Trustees decision was "without reason." *See Pagan*, 52 F.3d at 442. Accordingly, Plaintiff's motion for summary judgment as to the 3.25 pension credits at issue in the Northside Dispute is denied. Defendants' motion for summary judgment is granted.

B. Ideal Dispute

Plaintiff seeks .25 pension credits for work he allegedly performed for Ideal in December of 1999. (*See* Dkt. 31 at 15.) It is undisputed that, pursuant to Section 4.1 of the Plan, a participant needed to work 250 hours in Covered Employment in order to earn .25 credits for that year. (Sullivan Ex. D at 14, § 4.1.)

Plaintiff has submitted payroll records that, he argues, demonstrate that he worked a total of 253.5 hours "for which he was paid in 1999 by Ideal." (Dkt. 31 at 15.) The Court summarizes the payroll records he submits as follows:[11]

| Pay Period End Date | Hours of Paid Time |
|---|---|
| • December 5, 1999 | • 49.5 hours |
| • December 12, 1999 | • 48.0 hours |
| • December 19, 1999 | • 52.0 hours |
| • December 26, 1999 | • 61.5 hours |
| • January 2, 2000 | • 50.5 hours |
| • **Total** | • **261. 5 Hours** |

---

[11] Plaintiff's payroll statements are attached as Exhibit J to the Sullivan Dec. (29-11.)

15

Plaintiff arrives at his total of 253.5 by adding up all of the hours worked according to the above payroll records, and then subtracting "8 hours for holiday time." (Dkt. 31 at 15.)

Defendants, on the other hand, submit that Plaintiff worked 212.5 hours in "covered employment" for Ideal in December 1999. (Dkt. 33 at ¶¶ 6-10.) The Fund's "Member Detail Display" for Sullivan shows that Ideal paid benefit contributions for 111.5 hours for the first half of December 1999 and for 90 hours for the second half of December 1999, for a total of 212.5 hours worked by Sullivan for Ideal in December 1999. (Dkt. 33-2.) This comports with the "Annual Statement" that the Fund sent Sullivan at the time. (Dkt. 33-1.) Likewise, the "remittance report" submitted by Ideal to Local 553 for December of 1999 reported a total of 212.5 hours in December of 1999. (Dkt. 33 ¶¶ 9-10; Dkt. 33-3.)

The Court assumes that this discrepancy is explained by the fact that the last pay period to which Plaintiff cites straddles December 1999 and January 2000. In his brief, Plaintiff argues that the last "seven day period contained 5 days in December 1999 and 2 days in January 2000. The 2 days in January were a Saturday and a Sunday. Plaintiff noted he did not work either day." (Dkt. 31 at 15.)

> In denying Plaintiff's claim for the .25 pension credits, Defendants explained that:
>
> the evidence you submitted in response to inquiries from the Trustees as to the type and amount of employment you performed does not substantiate your claim because it does not show that you worked 250 hours or more in 1999 so as to qualify for additional pension credit. Specifically, the Trustees determined that you did not perform sufficient work in 'Covered Employment,' as defined at Section 1.9 of the [Pension Regulations] to substantiate your claim for additional credit in 1999.

(Dkt. 23-8.)

While the Trustees could have more fully explained, or provided more details to support, the bases for the denial, that alone is insufficient to find their decision arbitrary and capricious.

*See Pagan*, 52 F.3d at 442. This is especially so given that Plaintiff submits no evidence to support his claim that he worked all of the hours in December of 1999, as opposed to January of 2000. Further, neither party provides any evidence or argument about how such "straddle" periods ought to be calculated for the purposes of pension credit. Thus, there remain genuine issues of disputed fact with respect to Plaintiff's claim for the .25 pension credits based on his work for Ideal in December 1999. Accordingly, Plaintiff's motion for summary judgment as to the Ideal Dispute is denied.

## CONCLUSION

The Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendants' cross-motion for summary judgment with respect to the Northside Dispute. Plaintiff's claim for 3.25 pension credits based on his work for Northside is, therefore, dismissed with prejudice. Moreover, because disputed issues of fact remain as to the .25 pension credits Plaintiff alleges he is owed for his work with Ideal in December 1999, his motion for summary judgment as to that claim is DENIED. The case will, therefore, proceed as to the Ideal Dispute.

The parties shall confer and propose for the Court's approval, by April 14, 2014, a date for the filing of a joint pretrial order in this matter.

SO ORDERED:

/s/
PAMELA K. CHEN
United States District Judge

Dated: March 24, 2014
      Brooklyn, New York